NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

JASON CHRISTOPHER LINDSEY, JR., *Appellant.*

No. 1 CA-CR 19-0079
FILED 2-18-2020

Appeal from the Superior Court in Maricopa County
No.   CR 2015-108749-001
The Honorable Michael J. Herrod, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Bain & Lauritano PLC, Glendale
By Sheri M. Lauritano
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Jennifer B. Campbell delivered the decision of the Court, in which Judge Lawrence F. Winthrop and Judge Michael J. Brown joined.

---

**C A M P B E L L**, Judge:

¶1        This appeal is presented to us pursuant to *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969). Defense counsel has searched the record on appeal and advised us there are no meritorious grounds for reversal. Lindsey was given the opportunity to file a supplemental brief but did not do so. Our obligation is to review the entire record for reversible error, *State v. Clark*, 196 Ariz. 530, 537, ¶ 30 (App. 1999), viewing the evidence in the light most favorable to sustaining the conviction and resolving all reasonable inferences against Lindsey, *State v. Guerra*, 161 Ariz. 289, 293 (1989).

**BACKGROUND**

¶2        In February 2015, four friends were hanging out on a Friday evening. They all piled into a car to go pick up one of the victim's brothers from a basketball game at a local high school. The driver parked in front of the school's gym and waited while the rest of the group went inside. The group could not find the brother in the gym, so they returned to the car. While walking back to the car, a group of people, including Lindsey, started yelling at them. The victims got back into the car and drove away. Lindsey and his group of friends followed the victims to an intersection and pulled up next to them.

¶3        While both cars were stopped at the intersection, Lindsey took out a gun and fired multiple shots at the victims' car, hitting it three times. The front seat passenger was shot once in the forehead and once in the cheek. The victims sped away to a nearby Walmart and parked by the front door. The three unharmed victims got out of the car and went inside Walmart to find help. The injured victim was eventually transported to a hospital where she was pronounced dead.

¶4        During this time, police located the car Lindsey was in and followed it back to an apartment complex. When police initiated a traffic stop, Lindsey got out of the car, ran though the complex, threw the gun

away, and ran to his mother's apartment, losing the police officer who was chasing him. That same night, police found Lindsey inside his mother's apartment and arrested him. The gun used to shoot the victim was also found inside the complex.

¶5        Lindsey was charged with first-degree murder, drive-by-shooting, and three counts of aggravated assault. The State alleged the use of a deadly weapon and physical, emotional, or financial harm to the victims and their families as aggravating circumstances.

¶6        At trial, Lindsey testified that when his car pulled up next to the victims' car, the driver flashed gang signs and cursed at him. Then someone in his car asked, "you gonna let him talk to you like that?" Lindsey testified that he was then handed a gun and "rack[ed]" it. Lindsey admitted that he was the one who shot from the car and caused the victim's death, but testified that he did not intend to shoot the gun and was only trying to scare the victims. Lindsey also admitted that he racked the gun to make sure that a round was in the chamber and admitted that the intent of racking a gun is to fire it.

¶7        After a 13-day trial, the jury found Lindsey guilty of first-degree murder, drive-by-shooting, and three counts of aggravated assault. The jury also found that the State had proved that the offenses involved the use of a deadly weapon as an aggravating circumstance. Lindsey was sentenced to life imprisonment for first-degree murder, 10.5 years imprisonment for the drive-by-shooting, and 7.5 years imprisonment for each aggravated assault conviction. Lindsey was given 1441 days of presentence incarceration credit. Lindsey timely appealed.

**DISCUSSION**

¶8        After a thorough review of the record, we find no reversible error. *Clark*, 196 Ariz. at 541, ¶ 50. The record reflects Lindsey was present and represented by counsel at all critical stages of the proceedings. The evidence presented supports the convictions, and the sentences imposed fall within the range permitted by law. As far as the record reveals, these proceedings were conducted in compliance with the Arizona Rules of Criminal Procedure and Lindsey's constitutional and statutory rights. Therefore, we affirm Lindsey's convictions and sentences.

¶9        Unless defense counsel finds an issue that may be appropriately submitted to the Arizona Supreme Court, her obligations are fulfilled once she informs Lindsey of the outcome of this appeal and his future options. *State v. Shattuck*, 140 Ariz. 582, 584–85 (1984). Lindsey has

30 days from the date of this decision to proceed, if he wishes, with a pro per motion for reconsideration or petition for review.

## CONCLUSION

¶10      For the foregoing reasons, we affirm.

